Case No. 3:22-cv-02170-S

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NOTHERN DISTRICT OF TEXAS

In the Matter of: Highland Capital Management, L.P.,

    Debtor.

NexPoint Advisors, L.P. and Highland Capital Management Fund Advisors, L.P.,

    Appellants,

v.

Highland Capital Management, L.P.,

    Appellee.

## APPELLANTS' REPLY BRIEF

Appeal from the United States Bankruptcy Court for
the Northern District of Texas, the Honorable Stacey G.C. Jernigan

Davor Rukavina, Esq.
Julian P. Vasek, Esq.
**MUNSCH HARDT KOPF & HARR, P.C.**
500 North Akard St., Ste. 3800
Dallas, Texas  75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

**ATTORNEYS FOR NEXPOINT
ADVISORS, L.P. AND HIGHLAND
CAPITAL MANAGEMENT FUND ADVISORS, L.P.**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

I.   SUMMARY OF REPLY ............................................................................1

II.  REPLY .........................................................................................................2

    A.   BANKRUPTCY COURT ERRED IN AWARDING MONEY JUDGMENT AGAINST THE ADVISORS ........................................................................2

    B.   THE ADVISORS OUTSOURCED THE RECALCULATION PROCESS TO THE DEBTOR ........................................................................................................4

    C.   ADVISORS DID NOT WAIVE PAROL EVIDENCE OBJECTIONS ...................6

# TABLE OF AUTHORITIES

**Cases**

*Hubacek v. Ennis State Bank*, 317 S.W.2d 30, 31 (Tex. 1958) .................................7

*In re Arlington Hospitality Inc.*, 368 B.R. 702, 715 n.12 (Bankr. N.D. Ill. 2007) ....7

*In the Matter of Penn-Dixie Indus. Inc.*, 22 B.R. 794, 797
(Bankr. S.D.N.Y. 1982) ......................................................................................7

**APPELLANTS' REPLY BRIEF**

NexPoint Advisors, L.P. ("NexPoint") and Highland Capital Management Fund Advisors, L.P. ("HCMFA", and with NexPoint, the "Advisors") hereby submit this their *Appellants' Reply Brief*, replying to the *Answering Brief of Appellee* (the "Appellee Brief"), filed by Highland Capital Management, L.P. (the "Debtor"), in support of which they would respectfully state as follows:

### I.   SUMMARY OF REPLY

The Bankruptcy Court is a court of equity. The Bankruptcy Code is a model of fairness. A Chapter 11 debtor is a fiduciary, held to a higher standard. Yet here, there is no doubt that the Advisors overpaid by the Debtor millions of dollars, *postpetition*, for employees and services that the Debtor was no longer providing. There is no doubt that the Debtor knew this, having calculated in its internal documents the millions of dollars in profits it was now making. There is no doubt that the Debtor hid these facts from the Advisors even as the Advisors had retained the Debtor to handle the Advisors' accounts payable and accounting functions, and were paying the Debtor large sums to do so. Greed got the better of the Debtor, and the rest is simply an after-the-fact rationalization.

What is harder to understand is why the Bankruptcy Court did not appear to be troubled by its debtor engaging in such practices, and why it did not seek to fashion some equitable remedy in light of the obvious millions of dollars of

1

overpayments. Instead, the Bankruptcy Court focused on inadmissible parol evidence and hyper-technicalities to provide the Debtor with a windfall. First, the Bankruptcy Court converted what is clearly an agreement to reimburse, into a fixed-fee agreement, by looking to inadmissible parol evidence. Second, the Bankruptcy Court relieved the Debtor of any burden or obligation, contractual or otherwise, of informing the Advisors that they were paying large monthly amounts for employees who were no longer there. Third, the Bankruptcy Court awarded the Debtor a money judgment for the Advisors failing to pay the Debtor for employees who no longer existed, and even after the Advisors triggered the process of recalculating reimbursable amounts under the agreements.

The PRAs were agreements to reimburse the Debtor for the use of its employees. If the Advisors did not use those employees, because the employees were no longer there, then there was nothing to reimburse. The Court should reverse the judgment below and remand to the Bankruptcy Court for further proceedings in light of the reimbursable nature of the agreements, as opposed to fixed-fee agreements.

## II.   REPLY

**A.   BANKRUPTCY COURT ERRED IN AWARDING MONEY JUDGMENT AGAINST THE ADVISORS**

It is important to remember that the issue of whether the Advisors gave notice to the Debtor of the overpayments under the PRAs consists of two separate periods

of time—which distinction the Bankruptcy Court failed to properly take into account.  First is the period of time for which the Advisors actually paid the Debtor and sought a refund.  Here, the Debtor is correct that the Bankruptcy Court was free to disbelief Waterhouse's testimony that he raised the issue of the overpayments in 2019.  However, the facts are different for the period of time during which the Advisors did not pay the Debtor under the PRAs and for which the Bankruptcy Court awarded the Debtor money damages under the PRAs.  Here, there can be no question of fact that the Advisors *did* raise the issue of the overpayments sufficient to trigger the adjustment process under the PRAs.

The Advisors raised the issue both in a December 1, 2020 e-mail and December 11, 2020 letter, which communications were in the record and which communications the Bankruptcy Court could not disregard.  *See* ROA.002447-49; ROA.003133-34 (74:6 – 75:18).  Seery admitted that the Debtor received this letter.  *See id*.  These communications were sufficient to trigger the mandatory requirement that the parties negotiate in good faith different rates under the PRAs, which Seery admitted the Debtor never did, instead ignoring the communications.  *See* ROA.003133 (74:18-21).  Thus, the Debtor breached the PRAs by refusing to negotiate different reimbursable rates in good faith as the contracts required, and the Debtor could not thereafter seek the benefit of those contracts—certainly not in the inflated amounts claimed.

Even if the Court otherwise affirms the Bankruptcy Court on the issue of the overpayments, therefore, the Court should reverse and render judgment that the Debtor take nothing by it claims for unpaid amounts under these contracts because: (i) the Advisors unquestionably raised the issue of adjusting the amounts being paid; and (ii) the Debtor admittedly refused to engage in any good faith negotiation regarding the same.

**B.     THE ADVISORS OUTSOURCED THE RECALCULATION PROCESS TO THE DEBTOR**

Perhaps the most inequitable and unfair result of the Debtor's actions in overbilling the Advisors is that the Advisors were paying the Debtor to monitor their contracts to ensure that they were paying only amounts that were properly payable. There is no question that the SSAs were in effect at all relevant times and that those agreements obligated the Debtor to provide the Advisors with accounting, payments, book keeping, vendor management, accounts payable, and various other services. *See* ROA.000374; ROA.000379-80.  There is no question that the Debtor, through its employees, did provide the Advisors with accounts payable services, including reviewing contracts and invoices for whether the Advisors were being billed proper amounts.  The Advisors' argument is simple: to the extent that the PRAs required the Advisors to trigger a process to recalculate amounts payable under the PRAs based on the actual headcount of employees, that was a service that the Advisors

farmed out to the Debtor to do through its employees in exchange for handsome contractual fees.

The Debtor argues that "[t]he Advisors knew of each employee's departure and continued to knowingly pay fixed monthly amounts under the PRAs in the same fashion for 36 months straight," and that the "overwhelming evidence in the record contradicts any notion that the Advisors ever sought modification of the PRAs during the 36-month relevant period." Appellee Brief at p. 46. But who were the "Advisors" in the foregoing statements? They were the employees and officers of the Debtor. An artificial entity can only act through its agents and, here, the Advisors' agents were the Debtor's employees and officers under the SSAs. When the Debtor argues that the Advisors knew "x," "y," or "z," or failed to take any action, it was the Debtor which knew these things and failed to take the action since it was the Debtor's employees and agents. How the Debtor could then argue that these same employees and agents had zero obligation to do something about the overpayments in light of the clear language of the SSAs is illogical and paradoxical.

Just as with third-party bills and invoices that the Debtor would process on behalf of the Advisors and then cause the Advisors to pay, the Debtor was contractually obligated to perform these same services with respect to the Advisors' PRAs with the Debtor. Just as the Debtor could be liable to the Advisors for failing to properly discharge these duties, such as by not catching the fact that a third party

5

was overbilling the Advisors or not complying with contractual rates, the Debtor could and should be held accountable with respect to the PRAs by not being permitted take advantage of a situation of its own making. Had the Debtor's employees and agents properly performed their obligations under the SSAs to ensure that the Advisors were only paying for the services they were receiving, then the Debtor's employees would have caused the PRAs to be modified to take into account the greatly reduced level of employees—the same as the annual reconciliation and adjustment process undertaken prior to bankruptcy (and under which the Debtor benefited by an upwards adjustment).

### C. ADVISORS DID NOT WAIVE PAROL EVIDENCE OBJECTIONS

As the Advisors have briefed, the PRAs were contracts of reimbursement and not, as the Debtor argued, fixed-fee contracts. It is in this respect that the Advisors submit the Bankruptcy Court erred as a matter of law by considering and relying on extrinsic evidence to contradict the plain and unambiguous terms of the PRAs. That converting the "reimbursement" contracts into fixed-fee contracts would require parol evidence is obvious, as there is no other way to get there without reading "reimbursement" out of the contracts—even though the term appears in the very name of the contracts.

In response to the Advisors' argument that the Bankruptcy Court improperly considered parol evidence, the Debtor argues that the Advisors waived this argument

by not objecting to certain testimony at trial. It is odd to argue waiver when the Advisors expressly raised and preserved this issue in their trial brief and in their opening arguments, but even so the Debtor is flat wrong: one does not have to make an evidentiary objection at trial to preserve a parol evidence issue. The law is clear that the parol evidence rule is a substantive rule of contract law and not merely a procedural rule of evidence. *See, e.g., Hubacek v. Ennis State Bank*, 317 S.W.2d 30, 31 (Tex. 1958). Thus, "[f]ailure to object to the admission of parol evidence at trial [] does not waive the rule's applicability." *In re Arlington Hospitality Inc.*, 368 B.R. 702, 715 n.12 (Bankr. N.D. Ill. 2007). *Accord In the Matter of Penn-Dixie Indus. Inc.*. 22 B.R. 794, 797 (Bankr. S.D.N.Y. 1982).

The Bankruptcy Court found the PRAs unambiguous, yet construed them as fixed-fee contracts, which nowhere appears in the contracts. The Bankruptcy Court did so only by considering parol evidence to contradict the express language of the unambiguous contracts. The Court should reverse the Bankruptcy Court's decision and remand with instructions to reconsider the issues in light of the express language of the PRAs addressing reimbursement and not fixed fees.

RESPECTFULLY SUBMITTED this 3d day of April, 2023.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    Julian P. Vasek, Esq.
    Texas Bar No. 24070790
    500 N. Akard St., Ste. 3800
    Dallas, Texas 75201-6659
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584
    Email: drukavina@munsch.com
    Email: jvasek@munsch.com

**ATTORNEYS FOR APPELLANTS NEXPOINT ADVISORS, L.P. AND HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 3d day of April, 2023, a true and a correct copy of the foregoing document was served by the Court's ECF system on the appellee by and through its counsel of record.

By: /s/ Davor Rukavina
    Davor Rukavina, Esq.

4860-3980-1691v.1 019717.00001