**United States District Court**
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| NEXPOINT ADVISORS, L.P., and HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P. § § § § | |
| v. § | CIVIL ACTION NO. 3:22-CV-2170-S |
| HIGHLAND CAPITAL MANAGEMENT, L.P. § § § | |
| IN RE: § § | BANKRUPTCY CASE NO. 19-34054-SGJ11; 21-03010-SGJ |
| HIGHLAND CAPITAL MANAGEMENT, L.P. § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is an appeal from the Judgment entered by the United States Bankruptcy Court for the Northern District of Texas ("Bankruptcy Court") in an adversary proceeding between Appellants NexPoint Advisors, L.P. ("NexPoint") and Highland Capital Management Fund Advisors, L.P. ("HCMFA") and Appellee Highland Capital Management, L.P. The Court has considered the Brief of Appellants ("Appellants' Brief") [ECF No. 6], Answering Brief of Appellee ("Answering Brief") [ECF No. 10], Appellants' Reply Brief [ECF No. 14], the record on appeal ("Record") [ECF Nos. 2, 5, 33-1], the arguments of counsel at the January 30, 2024, hearing, and the applicable law. For the following reasons, the Court finds the Bankruptcy Court did not err and **AFFIRMS** the Judgment.

### I. BACKGROUND

Appellants are registered investment advisors that contracted Appellee to provide certain services that enabled Appellants to operate as a business and to manage funds for their clients. R. 254-56. This adversary proceeding arises from competing breach of contract claims concerning

four intercompany agreements (collectively, "Agreements"): two Shared Services Agreements ("SSAs") and two Payroll Reimbursement Agreements ("PRAs"). Appellee entered into the SSAs, one with each of the Appellants, for the provision of "back-office" and "middle-office" services such as finance and accounting, payments, operations, bookkeeping, cash management, accounts payable, and accounts receivable. *See id.* at 2282, 2295-97. At issue are the two amended SSAs: the Second Amended and Restated Shared Services Agreement between Appellee and HCMFA ("HCMFA SSA") and the Amended and Restated Shared Services Agreement between Appellee and NexPoint ("NexPoint SSA"). *Id.* at 2280-92, 2293-311.

Appellee also entered into two PRAs, one with each of the Appellants, for the provision of "front-office" advisory services: the Payroll Reimbursement Agreement between Appellee and HCMFA ("HCMFA PRA") and the Payroll Reimbursement Agreement between Appellee and NexPoint ("NexPoint PRA"). *Id.* at 2245-51, 2265-71. Each PRA contains one amendment: Amendment Number One to Payroll Reimbursement Agreement ("HCMFA PRA Amendment") and Amendment Number One to Payroll Reimbursement Agreement ("NexPoint PRA Amendment"). *Id.* at 2274-77. The HCMFA PRA Amendment and NexPoint PRA Amendment were the only changes to the PRAs, and each represented "a one time payment of estimated additional Actual Costs owed to [Appellee] for additional resources used." *Id.* at 2274, 2276. Pursuant to the HCMFA PRA Amendment, HCMFA paid Appellee an extra $1,200,000, and pursuant to the NexPoint PRA Amendment, NexPoint paid Appellee an extra $1,300,000. *Id.*

On October 16, 2019, Appellee filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Case"), and that court transferred venue to the United States Bankruptcy Court for the Northern District of Texas. *Charitable DAF Fund, L.P. v. Highland Cap. Mgmt., L.P. (In re Highland Cap. Mgmt. L.P.)*, No. 19-34054-SGJ-

2

11, 2022 WL 780991, at *1 (Bankr. N.D. Tex. Mar. 11, 2022). On November 30, 2020, Appellee provided written notice to Appellants of its intention to terminate the SSAs as of January 31, 2021. R. 255. The termination date was extended twice through February 28, 2021, in exchange for Appellants' advance payment for services Appellee provided in February 2021. *Id.* at 256. On January 9, 2020, the Bankruptcy Court entered "an order removing [Appellee's] founder, James Dondero . . ., from control [over Appellee] and replacing him with an independent board of directors." *Id.* at 253. Although Dondero ceded control of Appellee, he retained control of Appellants. *Id.* at 254. And later during the Bankruptcy Case, the relationship between Appellee and Dondero became contentious. *Id.* at 267.

On February 17, 2021, Appellee commenced the adversary proceeding by filing its Verified Original Complaint for Damages and for Declaratory and Injunctive Relief ("Complaint") in the United States Bankruptcy Court for the Northern District of Texas. R. 28-44. Appellee alleged that Appellants breached the Agreements by failing to pay for services rendered by Appellee pursuant to the contracts.[1] *Id.* at 39. Shortly before the filing of the Complaint, Appellants filed their Application for Allowance of Administrative Expense Claim ("Application") in the Bankruptcy Case. *Id.* at 324-35. In their Application, and contrary to Appellee's claims, Appellants alleged post-petition overpayments under all four Agreements and further alleged that Appellee breached the Agreements by failing to provide certain services owed.[2] *Id.* at 327-29. The Application was later consolidated with the adversary proceeding pursuant to the parties' stipulation. *Id.* at 129-30.

---

[1] Appellee's Complaint included additional claims for declaratory and injunctive relief; however, those claims were resolved by stipulation of the parties and are not the subject of the instant appeal. *See* R. 124.

[2] Although the Application alleges Appellee did not perform under the PRAs, *see* R. 329, Appellants clarified at oral argument that "under the PRAs, which were the front office services, [Appellee] kept providing . . . front office services to the [Appellants]." Tr. of Jan. 30, 2024, Hr'g, ECF No. 32 at 90:9-15.

The competing claims were tried before the Bankruptcy Court on April 12 and April 13, 2022, with closing argument on April 27, 2022. R. 268. The Bankruptcy Court heard testimony from six witnesses and admitted nearly 200 exhibits. *Id.* Following trial, the Bankruptcy Court entered judgment in favor of Appellee and issued Findings of Fact and Conclusions of Law in Support of a Judgment: (A) Granting Breach of Contract Claims Asserted by the Reorganized Debtor; and (B) Denying Defendants' Requests for Allowance of Administrative Expense Claims ("Findings"). *Id.* at 4-6, 264-323. The Bankruptcy Court denied the Application, finding that Appellants failed to meet their burden of proving post-petition overpayments and proving that Appellee breached the SSAs. *Id.* at 268-69. The Bankruptcy Court concluded that even if Appellants had met their burden of proving post-petition overpayments, Appellants waived such claims under the Agreements. *Id.* In addition, the Bankruptcy Court found that Appellee met its burden of proving that Appellants breached the Agreements via nonpayment in late 2020 and early 2021. *Id.* at 269. The Bankruptcy Court awarded Appellee an aggregate $2.596 million in damages. *See id.* at 323. Appellants timely appealed. *Id.* at 1.

## II. ANALYSIS

District courts have jurisdiction to hear appeals from final judgments of bankruptcy courts pursuant to 28 U.S.C. § 158(a). In reviewing the judgment of a bankruptcy court, the district court "functions as a[n] appellate court and applies the standard of review generally applied in federal court appeals." *Webb v. Reserve Life Ins. Co. (In re Webb)*, 954 F.2d 1102, 1103-04 (5th Cir. 1992) (citation omitted). "[R]eviewing courts—district and courts of appeals alike—must accept the findings of fact of the bankruptcy court unless the findings are clearly erroneous." *Coston v. Bank Malvern (In re Coston)*, 987 F.2d 1096, 1098 (5th Cir. 1992) (citation omitted). "A finding of fact is clearly erroneous only if on the entire evidence, the court is left with the definite and firm

4

conviction that a mistake has been committed." *Robertson v. Dennis* (*In re Dennis*), 330 F.3d 696, 701 (5th Cir. 2003) (internal quotation marks and citation omitted). Conclusions of law and mixed questions of law and fact are reviewed de novo. *Lavie v. Ran* (*In re Ran*), 607 F.3d 1017, 1020 (5th Cir. 2010) (citation omitted); *Cowin v. Countrywide Home Loans, Inc.* (*In re Cowin*), 864 F.3d 344, 349 (5th Cir. 2017) (citation omitted).

The Court agrees with the decisions of the Bankruptcy Court. In affirming the Judgment, the Court will first consider Appellants' arguments related to the PRAs and then will consider Appellants' arguments related to the SSAs.

### A. Payroll Reimbursement Agreements

The Court begins with the PRAs, analyzing first the construction of PRAs. Finding that the Bankruptcy Court properly construed them as fixed-fee contracts, the Court next analyzes whether Appellee had a duty to modify the PRAs and whether Appellants breached the PRAs. Because the Court affirms the Bankruptcy Court's construction of the PRAs, the Court concludes by rejecting Appellants' appeal of the Bankruptcy Court's denial of the Application.

### i. Construction of the PRAs

The Bankruptcy Court concluded that the PRAs were unambiguous contracts for the provision of front-office services in exchange for fixed monthly fees. R. 281-82. On appeal, Appellants challenge the Bankruptcy Court's construction of the PRAs, arguing that the PRAs were reimbursement contracts wherein the payment for front-office services was based on costs actually incurred. Appellants' Br. 25-31. Appellants also argue that the Bankruptcy Court erred by relying on extrinsic evidence to determine the meaning of the PRAs because "there is no way to reach the same conclusions the Bankruptcy Court did without considering extraneous evidence." *Id.* at 25-26.

5

When construing a contract, courts must ascertain and give effect to the parties' intentions as expressed in the writing itself. *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 805 (Tex. 2012) (citation omitted). "Consideration of surrounding circumstances is limited by the parol evidence rule, which prohibits a party to an integrated written contract from presenting extrinsic evidence 'for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports.'" *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 764 (Tex. 2018) (footnote and citations omitted).

Appellants contend the Bankruptcy Court erroneously relied on extrinsic evidence in construing the Agreements. Appellants' Br. 25-26. The Court disagrees. The Bankruptcy Court first analyzed the PRAs "[w]ithout considering any extrinsic evidence" and found that "the clear and unambiguous language of the definition of 'Actual Cost' in the PRAs indicates that these were intended to be fixed amount contracts." R. 281-82. Thereafter, the Bankruptcy Court provided its *alternate* conclusion, assuming that the Agreements are ambiguous. *Id.* at 284, 286. However, even throughout this secondary analysis, the Bankruptcy Court explained that it was "hard-pressed to find any ambiguity in the ***content*** of the Agreements." *Id.* at 284; *see also id.* at 307 ("As stated above, the [Bankruptcy Court] concludes that the PRAs are not ambiguous, and that the only reasonable interpretation is they contemplate a fixed monthly payment."). Although the Bankruptcy Court considered extrinsic evidence in reaching its alternate conclusion, the Bankruptcy Court did not err by first analyzing the plain language of the PRAs without considering any extrinsic evidence.

As to the proper construction of the PRAs, Appellants argue that it was error to construe the PRAs as fixed-fee monthly contracts. Appellants' Br. 26-31. Although the parties contend that the PRAs are unambiguous, each party offered a competing interpretation of the PRAs. *Id.* at 25.

6

Appellants claim that the PRAs were reimbursement agreements that required them to reimburse Appellee for the "actual costs" incurred for certain employees who were (i) dual employees of Appellee and Appellants and (ii) "provide[d] advice to any investment company registered under the Investment Company Act of 1940, as amended . . . pursuant to an investment advisory agreement between [Appellants] and such investment company . . . under [each of the Appellants'] direction and supervision (each, a '***Dual Employee***')." *Id.* at 24-25; R. 2246, 2266. Appellee, however, maintains Appellants were obligated to pay a flat monthly fee for the provision of investment advisory services rendered. Answering Br. 36-39. "A contract is not ambiguous merely because the parties disagree about its meaning and may be ambiguous even though the parties agree it is not." *URI, Inc.*, 543 S.W.3d at 763 (citation omitted).

The Court will conduct a de novo analysis of the PRAs by looking first at the plain language of the contracts themselves and without considering any extrinsic evidence. In both the HCMFA PRA and NexPoint PRA, Section 2.01 provides that "[d]uring the term, [each of the Appellants] shall reimburse [Appellee] for the Actual Cost to [Appellee] of certain employees." R. 2246, 2266. Neither of the PRAs define "reimburse," so the Court interprets it according to its "plain, ordinary, and generally accepted meaning." *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). Merriam-Webster defines "reimburse" as "to pay back to someone: repay." *Reimburse*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/reimburse (last visited Feb. 27, 2024). Based on this definition, Appellants argue for a rigid construction of the term "reimburse"; however, "words are simply implements of communication, and imperfect ones at that. Oftentimes they cannot be assigned a rigid meaning, inherent in themselves. Rather, their meaning turns upon use, adaptation and context as they are employed to fit various and varying situations." *URI, Inc.*, 543 S.W.3d 755 at 763 (quoting *Cal. Dep't of Mental*

7

*Hygiene v. Bank of Sw. Nat'l Ass'n*, 354 S.W.2d 576, 579 (1962)). Accordingly, the Court's analysis does not end there. The Court must objectively determine the terms of the reimbursement.

Section 2.01 of the PRAs provides that each of the Appellants were to pay back Appellee "for the Actual Cost . . . of certain [Dual] [E]mployees. . . ." R. 2246, 2266. The HCMFA PRA defines "Actual Cost" as "the actual costs and expenses caused by, incurred or otherwise arising from or relating to each Dual Employee, in each case during such period. Absent any changes to employee reimbursement, as set forth in Section 2.02, *such* costs and expenses are equal to $416,000 per month." *Id.* at 2245 (emphasis added). The definition in the NexPoint PRA is identical, except "*such* costs and expenses" under the NexPoint PRA "are equal to $252,000 per month." *Id.* at 2265 (emphasis added). The Court "cannot interpret a contract to ignore clearly defined terms, and, thus, [the Court] must accord [Actual Cost] its due meaning." *FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*, 426 S.W.3d 59, 64 (Tex. 2014) (citation omitted).

The Court finds that the PRAs are unambiguous as a matter of law and that the plain language of the "Actual Cost" definition provides that the PRAs were fixed-fee contracts. The Court declines to adopt Appellants' proposed interpretation of the PRAs. Their interpretation would be dependent on a rigid construction of the term "reimburse" and would wholly ignore the parties' own definition of "Actual Cost," which specifies that what "*such* costs and expenses are equal to." *Id.* at 2245, 2265 (emphasis added). Because the Court's "primary objective is to ascertain and give effect to the parties' intent as expressed in the instrument," the Court finds that each of the PRAs is a fixed-fee contract. *URI, Inc.*, 543 S.W.3d 755 at 763 (citation omitted). Accordingly, the Court agrees with the Bankruptcy Court in construing the PRAs as fixed-fee contracts.

Having concluded the PRAs are unambiguous as a matter of law, the Court need not address the Bankruptcy Court's alternate conclusion or the parties' sources of extrinsic evidence. Because each of the PRAs' unambiguous terms must be enforced as written, without regard to extraneous facts, parol evidence of the parties' alleged intent behind the PRAs cannot be considered where it "contradict[s] or var[ies] the meaning of the explicit [contract] language." *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 521 (Tex. 1995) (citation omitted). To the extent the Bankruptcy Court's alternate conclusions must be reached, the Court agrees with the Findings for the reasons articulated therein.

*ii. Duty to Modify the PRAs*

Appellants next argue that even if the PRAs were fixed-fee contracts, Appellee is at fault for not catching their alleged overpayments. Appellants' Br. 31. According to Appellants, Appellee had an obligation under the SSAs to monitor any changes to the status of the Dual Employees and make corresponding adjustments to the monthly amount owed under the PRAs. *Id.* at 31-35. This argument misses the mark for three reasons.

First, this argument assumes the PRAs provided for payment of costs actually incurred with respect to Dual Employees rather than a fixed monthly fee. For the reasons explained above, the Court finds that the PRAs are fixed-fee contracts.

Second, for the reasons articulated by the Bankruptcy Court, this Court finds that the PRAs did not impose a duty on Appellee to unilaterally modify the PRAs as a result of changes to the employment status of the individuals on the Dual Employees lists. R. 306-07.

Third, the Court concludes that the SSAs did not impose a duty on Appellee to modify the PRAs. Appellants argue that the Bankruptcy Court misinterpreted their argument by focusing solely on the PRAs. *See* Appellants' Br. 34-35. Appellants contend that Appellee's duty to modify

9

the Agreements arises under the SSAs and applies equally to the PRAs, but (1) there is no evidence that the service standards under the SSAs included a requirement that Appellee monitor changes to the Dual Employees' statuses and (2) Appellants fail to identify any other provision of the Agreements that imposes such a duty. Pursuant to Section 6.01 of the HCMFA SSA, Appellee was to "provide the Shared Services and the Shared Assets in the same manner as if it were providing such services and assets on its own account." R. 2285. Pursuant to Section 2.02(a) of the NexPoint SSA, Appellee was to provide "[a]ssistance and advice with respect to back- and middle-office functions including, but not limited to, . . . finance and accounting, payments, operations, book keeping, cash management, cash forecasting, accounts payable, accounts receivable, [and] expense reimbursement . . . ." *Id.* at 2295-96. The Record indicates that Appellee performed accordingly. The Bankruptcy Court found, and the Court agrees, that Appellants made consistent monthly payments under the Agreements for a thirty-five-month period, from January 1, 2018, to November 30, 2020. *See id.* at 298. The only changes that took place during this period were the additional payments of $1.2 and $1.3 million made through the HCMFA PRA Amendment and NexPoint PRA Amendment, respectively. *Id.* at 298, 2274, 2276. Thus, the Court finds that Appellee administered the Agreements pursuant to their terms and thereby satisfied the service standards under the SSAs.

The SSAs do not contain provisions that required Appellee to monitor the status of the Dual Employees and absent such representations, Appellants fail to show how the services rendered fell short of the articulated service standards. Contrary to Appellants' contention, the HCMFA SSA contained a limited warranty, which cautioned, "[e]xcept as specifically provided in this Agreement, [Appellee] makes no express or implied representations, warranties or guarantees relating to its performance of the Shared Services." *Id.* at 2286. Moreover, Section 2.06

of the NexPoint SSA makes clear that Appellee, as the staff and services provider, "shall not have any duties or obligations to [NexPoint] unless those duties and obligations are specifically provided for in this Agreement (or in any amendment, modification or novation hereto or hereof to which [Appellee] is a party)." *Id.* at 2300. Neither SSA specifically provides that Appellee has a duty to monitor the Dual Employees' statuses or modify the PRAs based on changes in such employees' statuses.

Accordingly, the Court finds that Appellee had no duty to monitor changes to the status of the Dual Employees or make corresponding adjustments to the monthly payment under the Agreements.

*iii. Appellee's Breach of Contract Claim*

Appellants further challenge the Bankruptcy Court's ruling on Appellee's breach of contract claim, which required Appellee to establish: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff as a result of the defendant's breach." *Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 244 (5th Cir. 2018) (citation omitted). To recover compensatory damages, the plaintiff must prove that he suffered some pecuniary loss as a result of the breach. *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 758 (Tex. App.—El Paso 2000, no pet.) (citation omitted); *Multi-Moto Corp. v. ITT Com. Fin. Corp.*, 806 S.W.2d 560, 569 (Tex. App.—Dallas 1990, writ denied) (citation omitted).

The first three elements are undisputed. The parties agree that (1) the PRAs were valid contracts, (2) Appellee tendered performance by providing the services it owed Appellants under the PRAs,[3] and (3) at the direction of Dondero, Appellants stopped making payments under the

---

[3] Appellants conceded during oral argument that "under the PRAs, . . . [Appellee] kept providing . . . front office services to [Appellants]." Tr. of Jan. 30, 2024, Hr'g, ECF No. 32 at 90:13-15.

11

PRAs in December 2020 and January 2021 and thus breached the PRAs. R. 3019-20. With respect to the fourth element, the Court concludes that Appellee proved it suffered a pecuniary loss resulting from Appellants' breach of the PRAs in December 2020 and January 2021. The Court finds that Appellee established that its compensatory damages were $832,000 for unpaid amounts under the HCMFA PRA and $504,000 for unpaid amounts under the NexPoint PRA. *Id.* at 320, 323.

The Court now evaluates Appellants' argument that Appellee committed the first material breach of the PRAs. "It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (citing *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994)). "[O]ne consideration in determining the materiality of a breach is 'the extent to which the nonbreaching party will be deprived of the benefit that it could have reasonably anticipated from full performance.'" *Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Ins. Co.*, 288 S.W.3d 374, 378 (Tex. 2009) (citation omitted).

According to Appellants, Appellee materially breached the PRAs by not engaging in good faith negotiations. Appellants argue that the Bankruptcy Court ignored evidence that, by raising the overpayment issue with Appellee, they triggered Section 2.02 of the PRAs, which required Appellee to negotiate modifications of the PRAs in good faith. Appellants' Br. 35-37; R. 2246, 2266. Specifically, Appellants contend that the Bankruptcy Court overlooked (1) testimony from Frank Waterhouse, who served as Appellee's Chief Financial Officer and as Treasurer to each of the Appellants, that he first raised the issue of overpayments in 2019, (2) a December 1, 2020, email from Dustin Norris, who served as Head of Distribution and Chief Product Strategist for

12

NexPoint and as an Executive Vice President of HCMFA, to Waterhouse and others, asking to "discuss next steps" on the PRAs, and (3) a letter sent to Appellee on December 11, 2020, requesting a modification of the amount owed under the PRAs. Appellants' Br. 35-37; R. 2447-49; ECF No. 33-1.

The Bankruptcy Court found that "[Appellants] failed to provide sufficient evidence that they made a formal request of [Appellee] to modify the fixed monthly amount, pursuant to the terms of the PRAs." R. 309. Even considering Waterhouse's testimony, the Bankruptcy Court emphasized that Waterhouse "never recalled requesting amendment of the PRAs." *Id.* n.113. This Court, on review, "defers to the bankruptcy court's determinations of witness credibility." *Saenz v. Gomez (In re Saenz)*, 899 F.3d 384, 392 (5th Cir. 2018) (citing *In re Dennis*, 330 F.3d at 701); *see also First Nat'l Bank LaGrange v. Martin (In re Martin)*, 963 F.2d 809, 814 (5th Cir. 1992) ("If the bankruptcy judge finds one version of events more credible than other versions, [the reviewing court] is in no position to dispute the finding."). On review of the evidence as a whole, the Court does not have a "definite and firm conviction that a mistake has been committed" in this respect. *In re Dennis*, 330 F.3d at 701 (citation omitted).

The second piece of evidence Appellants identify—the December 1, 2020, email—is also insufficient evidence of a request to modify the amount Appellants owed under the PRAs. Although Appellants concede that the December 1, 2020, email "is not a formal request signed off by a lawyer," they argue that the email was "an informal request" to renegotiate. Tr. of Jan. 30, 2024, Hr'g, ECF No. 32 at 19:5-20:8. The Court finds that while Norris's email does ask Waterhouse and another employee of Appellee to discuss the PRAs, it fails in any specific terms to request a modification of the Agreements. *See* R. 2447-49 ("[L]et's discuss next steps on these contracts, since they didn't submit termination notices for these, but did for the shared services.").

13

Finally, Appellants argue that the December 11, 2020, letter was an additional request to renegotiate the PRAs. Appellants' Br. 36-37. The letter referenced Section 2.02, noting that, "NexPoint and HCMFA are prepared to engage in good faith negotiations with [Appellee] regarding this issue, including, without limitation, regarding the appropriate reimbursement for [Appellee] for the months for which NexPoint and HCMFA have not yet made reimbursement payments." ECF No. 33-1 at 3. Additionally, "[t]o make negotiations productive, NexPoint and HCMFA request that [Appellee] provide data regarding the employees listed on the Exhibits A to the [PRAs] for the period during the chapter 11 case." *Id.* at 3-4.

The Bankruptcy Court did not address whether the letter triggered Appellee's obligation to negotiate in good faith or whether Appellants carried their burden of proving that Appellee breached this obligation. The Court finds that the December 11, 2020, letter triggered Appellee's obligation to negotiate the terms of the PRAs. However, given the timing of the letter, the Court finds that Appellants did not prove that Appellee breached its obligation because there is no evidence that Appellee acted in bad faith by not responding to the letter prior to the termination of the PRAs in January 2021. The PRAs do not require retroactive modification, so any modification to the PRAs would have been prospective. As a result, the only period subject to renegotiation was the period beginning January 2021. And there is insufficient evidence that Appellee refused to negotiate in the twenty days that remained in December 2020 after receiving the letter or that the lack of response was in bad faith.

Even if the Court were to find that Appellee breached the PRAs for failing to renegotiate, which it does not, the alleged breach was not material for two reasons. First, the Texas Supreme Court has held that "agreements to negotiate toward a future contract are not legally enforceable." *Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S.W.3d 362, 371 (Tex. 2019)

(citing *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 242 (Tex. 2016)); *see also John Wood Grp. USA, Inc. v. ICO, Inc.*, 26 S.W.3d 12, 21 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) ("[A]n agreement to negotiate in the future is unenforceable, even if the agreement calls for a 'good faith effort' in the negotiations." (citation omitted)).

Second, the requirement to negotiate in good faith did not commit the parties to reach an agreement, and the parties could not have reasonably anticipated that renegotiations would guarantee modification despite good faith efforts. *See* R. 3109 (noting that Appellee's relationship with Dondero "had really gone . . . south" amid the Chapter 11 bankruptcy proceedings in 2020). Therefore, even if Appellee breached the PRAs, the breach was not material because it did not deprive Appellants of the benefit they could have reasonably anticipated from full performance. *Prodigy Commc'ns*, 288 S.W.3d at 378 (citation omitted).

### iv. Appellants' Administrative Expense Claim for Alleged Overpayments[4]

Appellants seek an administrative expense claim for alleged overpayments they made under the PRAs from October 16, 2019 (the date Appellee filed its voluntary petition in the Bankruptcy Case) until November 30, 2020. Appellants' Br. 44-46. Because the Court concluded above that the PRAs are fixed-fee contracts and Appellee had no duty to adjust the monthly payment under the Agreements, the Court finds that Appellants did not meet their burden of proving that they made any overpayments under the PRAs. Further, the Court finds that the Bankruptcy Court did not err in concluding that through their conduct, Appellants waived their right to assert claims under the PRAs for the reasons articulated in the Bankruptcy Court's Findings.

---

[4] Appellants concede that Appellee "kept providing . . . front office services to [Appellants]." Accordingly, the Court need not address Appellants' claim that Appellee breached the PRAs by failing to provide front-office services. Tr. of Jan. 30, 2024, Hr'g, ECF No. 32 at 90:13-15; R. 327.

### *B. Shared Services Agreements*

Appellants finally challenge the Bankruptcy Court's rulings on the parties' breach of contract claims under the SSAs, which, again, require the moving party to establish: (1) a valid contract; (2) performance by the plaintiff; (3) the defendant's breach; and (4) damages resulting from the defendant's breach. *Williams*, 884 F.3d at 244.

### *i. Appellee's Breach of Contract Claim*

The Court finds that the Bankruptcy Court did not err in concluding that Appellants breached the SSAs by failing to pay the requisite amounts. The first element is satisfied because it is undisputed that the SSAs were valid contracts. The parties agree that the NexPoint SSA contemplated a fixed monthly fee of $168,000 per month for the provision of front-office services and that while the HCMFA SSA was a variable fee contract, Appellee only charged Appellants according to the allocation formula for "Actual Cost." R. 274; Appellants' Br. 9; Answering Br. 9. The amounts owed under the HCMFA SSA generally ranged between $300,000 to $310,000 each month. Answering Br. 9.

As to the second element, Appellee argues that it performed the services it owed Appellants under the SSAs. *Id.* at 47-49. The Court agrees. The Bankruptcy Court scrutinized the evidence presented at trial and found that Appellants made numerous representations to the third-party Retail Board that Appellee was sufficiently performing all services under the Agreements. R. 296. On review, the Court agrees with the Bankruptcy Court. *See Taylor-Travis v. Jackson State Univ.*, 984 F.3d 1107, 1116 (5th Cir. 2021) ("Under clear error review, if the trial court's factual findings are 'plausible in light of the record viewed in its entirety, we must accept them[.]'" (quoting *Ali v. Stephens*, 822 F.3d 776, 783 (5th Cir. 2016))). Accordingly, the Court finds that Appellee carried its burden of proving it performed under the SSAs, satisfying the second element.

The third element is also satisfied. Appellants do not contest that they stopped making payments under the Agreements in November 2020.[5]

Finally, the Court concludes that the fourth element is satisfied because Appellee proved it suffered a pecuniary loss resulting from Appellants' breach of the SSAs. As the Bankruptcy Court did, the Court finds that Appellee's damages are the amounts that were not paid under the SSAs: $924,000 for unpaid amounts under the HCMFA SSA in November 2020, December 2020, and January 2021, and $336,000 for unpaid amounts under the NexPoint SSA for December 2020 and January 2021. R. 323.

*ii. Appellants' Administrative Expense Claim for Alleged Overpayments and Breach of Contract*

Appellants also seek an administrative expense claim for alleged overpayments under the SSAs. Appellants' Br. 44-46. Appellants argue that Appellee failed to perform certain services owed under the SSAs, including legal and compliance services, and that such failure constituted a breach of the SSAs. Appellants' Br. 38-42. Relying on the analysis above, the Court finds that Appellants did not carry their burden of proving that Appellee breached the SSAs. Specifically, Appellants did not prove that Appellee withheld legal and compliance services it owed under the SSAs in light of multiple contemporaneous representations to the Retail Board that Appellee was, in fact, providing all services required under the Agreements. R. 286-92. In opposition, Appellants cite testimony from Norris that Appellants did not receive certain legal services owed, which resulted in $425,000 in cover damages. Appellants' Br. 39 & n.105-06; *see also* R. 2757, 2814-15. However, Norris's testimony alone does not leave the Court with the "definite and firm

---

[5] Appellants did not make payments under the NexPoint SSA for services rendered in December 2020 and January 2021. Answering Br. 32. Because the HCMFA SSA was paid in arrears, Appellants did not make payments under the HCMFA SSA for services rendered in the months of November 2020, December 2020, and January 2021. *Id.*

conviction that a mistake has been committed." *In re Dennis*, 330 F.3d at 701 (citation omitted). Accordingly, the Court finds that the Bankruptcy Court did not err by denying the Application.

For the reasons articulated by the Bankruptcy Court, the Court also finds that Appellants' claims under the SSAs were barred by the doctrine of waiver.

### III. CONCLUSION

For the foregoing reasons, the Judgment of the Bankruptcy Court is **AFFIRMED**.

**SO ORDERED.**

SIGNED February 28, 2024.

_____
**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**